UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joseph C. Davey, III as
Conservator for Jay C. Davey
a/k/a Joseph C. Davey, IV.

    v.                              Civil No. 17-cv-244-JL
                                        Opinion No. 2018 DNH 200

Federal National Mortgage
Association, Wells Fargo, and
their counsel Harmon Law Offices


**MEMORANDUM ORDER**

In this mortgage-related action, the mortgagor challenges the bank's foreclosure on two parcels of property merged into a single parcel after one of the original parcels was mortgaged. Joseph C. Davey III, proceeding pro se, brought this action in Rockingham County Superior Court on behalf of and as conservator for the mortgagor, his permanently-disabled son, Joseph C. Davey IV.[1] He concedes that defendants Wells Fargo Bank, N.A., and the Federal National Mortgage Association (FNMA) may properly foreclose on the mortgaged property (71 Plaistow Road) but contests--and seeks injunctive relief against--their foreclosure on adjacent property (69 Plaistow Road) that was merged with the mortgaged property after the mortgage was recorded. Defendants FNMA and Wells Fargo removed the action to this court, see 28

---

[1] To avoid confusion, the court refers to the plaintiff as "Davey" and to his father and conservator as "Joseph Davey."

U.S.C. § 1441, which has subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity).

The defendants now move for summary judgment on Davey's petition, arguing that, under Mahmoud v. Town of Thornton, 169 N.H. 387, 391 (2016), and on a factual record undisputed by the plaintiff, Wells Fargo's mortgage interest encumbers the entirety of the merged property. The court agrees and grants the defendants' motion.

I. **Applicable legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." DeAndrade v. Trans Union LLC, 523 F.3d 61, 65 (1st Cir. 2008) (internal quotations omitted).

"A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact." Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party has

accomplished this feat, the burden shifts to the nonmoving party, who must, with respect to each issue on which [he] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Celotex, 477 U.S. at 324). "[T]he non-moving party 'may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial.'" Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In analyzing a summary judgment motion, the court draws "all reasonable inferences that may be extrapolated from the record . . . in favor of the non-movant," but may disregard "allegations of a merely speculative or conclusory nature." Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39–40 (1st Cir. 2014). "As to issues on which the [nonmovant] bears the ultimate burden on proof," as Davey does here, he "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012). The following recitation takes this approach, describing facts that are undisputed except where noted.

## II. **Background**

This suit concerns two adjacent parcels of land in Plaistow, New Hampshire--71 Plaistow Road and 69 Plaistow Road. Davey took title to the 71 Plaistow Road parcel in 1998.[2] He obtained the 69 Plaistow Road parcel in 2002.[3]

Davey took out a mortgage loan on September 20, 2004 in the original amount of $280,000.00 (the "Wells Fargo mortgage").[4] In exchange for the loan, he conveyed a security interest in the 71 Plaistow Road parcel, and only the 71 Plaistow Road parcel, to Mortgage Electronic Systems, Inc. and to its successors and assigns.[5] The mortgage was subsequently assigned several times. FNMA currently holds the mortgage by assignment from Wells Fargo.

Around the same time, Davey began proceedings to merge the 69 Plaistow Road parcel with the 71 Plaistow Road parcel.[6] R.J. Pica Engineering filed an Application for Planning Board Action

---

[2] Defendants' Mot. Ex. B (doc. no. 23-4). Davey has not challenged the authenticity of this or any of the defendants' other submitted evidence.

[3] Defendants' Mot. Ex. C (doc. no. 23-5).

[4] Defendants' Mot. Ex. D (doc. no. 23-6).

[5] Id.; Defendants' Mot. Ex. E (doc. no. 23-7) at 3.

[6] It is unclear from the record whether Davey began these proceedings before or after taking out the Wells Fargo mortgage loan. Neither party suggests, however, that this lack of clarity impacts summary judgment on the issues discussed below.

with the Town of Plaistow Planning Board, on Davey's behalf.[7] Pica Engineering identified both the 69 and 71 Plaistow Road parcels as the site of the proposed action, which was to "convert two residential sites to a[n] office complex[,] remove two structures and build an addition on the remaining building[, and] removal of lot line to combine two lots."[8] Davey both signed the application and asked the Planning Board to allow Pica Engineering to represent him at meetings regarding the application.[9]

The Planning Board met on September 15, 2004, to address this proposed "voluntary lot merger and commercial site plan for properties located at 69 and 71 Plaistow Road."[10] It conditionally approved the application two months later[11] and, on October 19, 2005, gave its final approval.[12] The lot merger site plan was recorded with the Rockingham Registry of Deeds.[13]

---

[7] Defendants' Mot. Ex. G (doc. no. 23-9).

[8] Id. at 3.

[9] Id. at 4, 9.

[10] Id. at 10.

[11] Id. at 11.

[12] Id. at 12.

[13] Defendants' Mot. Ex. H (doc. no. 23-9).

5

In 2006, Davey obtained a commercial mortgage loan in the original amount of $44,000, secured by both of the now-merged 69 and 71 Plaistow Road parcels.[14] In 2012, People's United Bank assigned that note and mortgage to an individual.[15]

Sometime thereafter, the State of New Hampshire took a 0.19 acre portion of the merged parcels and two easements--one permanent and one temporary--on the merged property through eminent domain, entitling Davey to compensation. In light of their liens on some or all of the merged parcels, both People's United and Wells Fargo claimed the $85,000 deposit allotted by the State as compensation. The New Hampshire Board of Tax and Land Appeals (the "Land Board") held a hearing on January 12, 2012 to apportion the State's deposit.[16] It concluded that almost the entire taking impacted only the 69 Plaistow Road parcel, and that only 5% of the temporary easement--an amount "de minimis under any reasonable calculation"--impacted the 71 Plaistow Road parcel.[17] As Wells Fargo admitted at the time, its mortgage encumbered only the 71 Plaistow Road parcel, despite

---

[14] Defendants' Mot. Ex. I (doc. no. 23-11) at 1, 8.

[15] Defendants' Mot. Ex. J (doc. no. 23-12).

[16] Defendants' Mot. Ex. K (doc. no. 23-13) at 1.

[17] Id. at 6-7.

the subsequent merger.[18]  Because the commercial mortgage encumbered both of the merged parcels, and thus was the only encumbrance on the 69 Plaistow Road parcel, the Land Board awarded the entirety of the deposit to People's United.[19]

Davey ceased making payments on the Wells Fargo mortgage in November 2007.  A foreclosure sale of the merged property was scheduled for March 5, 2008.  He then engaged in a series of bankruptcy filings, staying any other proceedings relating to the property in question.  After the United States Bankruptcy Court for the District of New Hampshire (Deasy, J.) granted relief from the stay, the defendants scheduled another foreclosure sale for June 7, 2017.  Davey filed this action in Rockingham County Superior Court on June 6, 2017, seeking and obtaining a temporary restraining order to enjoin the foreclosure sale.  The defendants then removed the action to this court.

### III. **Analysis**

Davey effectively seeks, through his complaint, to quiet title to the merged parcels.  Specifically, he seeks to establish that the defendants lack any mortgage interest in the 69 Plaistow Road parcel and thus may not foreclose on both of

---

[18] Id. at 6.

[19] Id. at 5-7.

the merged parcels. The defendants move for summary judgment arguing that, under New Hampshire law, their mortgage on the 71 Plaistow Road parcel encumbers both parcels after the merger, permitting them to foreclose on both. In light of the New Hampshire Supreme Court's recent decision in Mahmoud, 169 N.H. at 391, on the undisputed facts presented here, the court agrees with the defendants.

### A. Foreclosure on combined properties

In Mahmoud, like Davey in this case, Mahmoud mortgaged one lot (Lot 1) of his subdivided property. Id. at 388. The mortgage deed described the mortgaged property consistent with the depiction of that lot on the subdivision plan and included the following language:

> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Id. Mahmoud subsequently re-divided his property and, in the process, relocated the southerly border of Lot 1, adding 1.5 acres to the lot. Id. When he defaulted, the mortgagee foreclosed on the expanded lot. Id. at 389. Mahmoud petitioned to quiet title to the lot, arguing that "the foreclosure sale and mortgage deed were invalid, and that therefore he own[ed] record title to Lot 1, including the additional disputed land."

8

Id. The trial court granted summary judgment to the mortgagee, concluding that, though the mortgage occurred before the lot's expansion, the mortgage deed included any additions to the lot. Id.

The New Hampshire Supreme Court affirmed, agreeing that "the language in the mortgage deed granted to [the mortgagee] . . . clearly and automatically included any additions to the mortgaged property" because it "plainly stated that it included, together with the legal description of the property, . . . '[a]ll replacements and additions.'" Id. at 391. Thus, the mortgagee obtained, through foreclosure, the entire expanded lot. Id.

The parties do not dispute that Wells Fargo's mortgage deed in this action contains identical language. It describes the mortgaged property as:

> 71 Plaistow Road, Plaistow, New Hampshire, . . . TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. **All replacements and additions shall also be covered by this Security Instrument.** All of the foregoing is referred to in this Security Instrument as the "Property."[20]

In light of the New Hampshire Supreme Court's interpretation of this language in Mahmoud, the defendants' mortgage interest

---

[20] Defendants' Mot. Ex. E (doc. no. 27-3) at 3 (emphasis added).

encumbers not only the 71 Plaistow Road parcel, but also "clearly and automatically include[s] any additions to the mortgaged property," 169 N.H. at 391, including the merging of another lot--here, 69 Plaistow Road--into the mortgaged property.

B. **Davey's arguments**

Davey raises three arguments as to why the holding in Mahmoud does not warrant summary judgment in the defendants' favor. Neither presents a dispute of material fact that precludes summary judgment in this action.

First, Davey attempts to distinguish Mahmoud from this case, arguing summarily that, unlike Mahmoud's lot-line adjustment, the mortgage language does not cover a voluntary merger of two preexisting lots.[21] The court observes no probative differences between Davey's voluntary merger and Mahmoud's lot-line adjustment.

---

[21] Plaintiff's Mem. (doc. no. 27-1) at 3. As the defendants point out, Davey focuses his brief argument on language that does not govern the outcome of this case. Specifically, he contends that "the resulting parcel of land created by the merger was not, arguably, 'improvements, easements, appurtenances, and fixtures now or hereafter a part of the property.'" Id. He does not address the "replacements and additions" language, on which Mahmoud turns. See id. In consideration of Davey's pro se status, however, the court construes his argument as invoking the operative language and addresses it accordingly.

Like Mahmoud, Davey sought and received approval from a municipal planning board to alter the division of his property.[22] Davey's alteration, like Mahmoud's, was voluntary and initiated by the owner of both parcels.[23] In both instances, the alteration resulted in a significant increase in the property's land area--Mahmoud's lot-line change increased the area of the mortgaged property from 1.06 to 2.40 acres. And both Mahmoud and Davey completed their alteration by recording a site plan in the registry of deeds showing the post-approval parcels with new lot lines.[24] Mahmoud, 169 N.H. at 388.

The mortgage provides that "[a]ll replacements and additions" to the 71 Plaistow Road parcel "shall also be covered by this Security Instrument."[25] The New Hampshire Supreme Court considers that language "unambiguous," and reads it to include additions to the property effected voluntarily through approval by the municipal planning board. Mahmoud, 169 N.H. at 391. Accordingly, any difference that may exist between a re-divison,

---

[22] See Defendants' Mot. Ex. G (doc. no. 23-9).

[23] Davey effected his merger pursuant to N.H. Rev. Stat. Ann. § 674:39-a, I which allows that "[a]ny owner of 2 or more contiguous preexisting approved or subdivided lots or parcels who wishes to merge them for municipal regulation and taxation purposes may do so by applying to the planning board or its designee."

[24] Defendants' Mot. Ex. H (doc. no. 23-10).

[25] Defendants' Mot. Ex. E (doc. no. 23-7) at 3.

11

as in Mahmoud, and a merger, as in Davey's case, does not amount to a dispute of material fact that would defeat summary judgment.

At oral argument, Davey asserted a second difference between his case and Mahmoud.[26] He argued that Mahmoud does not apply to this case because, in Mahmoud, no separate mortgage encumbered the post-merger property as the commercial mortgage does here. While true that there is no indication that a separate mortgage encumbered the merged property in Mahmoud, that factual difference is not material to the holding in that case or this court's application of it. Mahmoud turns on the language in the mortgage deed encumbering the original lot and addresses whether, in light of that language, acreage added to the originally-mortgaged property becomes part of the property secured by that mortgage. 169 N.H. at 390-91. Whether another mortgage also encumbers the merged property, as here, may lead to a dispute between mortgagees over which mortgage takes priority; it does not affect the Davey's claims here.

---

[26] This court "generally will not consider theories raised for the first time at oral argument, out of fairness to adverse parties and the court." Exeter Hosp. v. New England Homes, Inc., 2011 WL 3862146, at *4 (D.N.H. Sept. 1, 2011). It addresses Davey's argument, however, out of consideration for his pro se status, and because defense counsel reasonably could have anticipated it and was afforded an opportunity to respond to it at the hearing.

Finally, Davey challenges "whether the Defendants even hold the subject Commercial Mortgage that the Defendants seek to foreclose."[27] Wells Fargo has produced evidence that People's United assigned the commercial mortgage to an individual, Karen Varney.[28] Davey contends, and has maintained since this action's inception, that a differnt individual investor, Jeremy Provencher, holds that mortgage.[29] At oral argument, he explained that Varney transferred her interest in the mortgage to Provencher. Though he has produced no evidence to that effect at any stage in this litigation, Davey suggests that the ownership of the commercial mortgage constitutes a dispute of material fact.[30]

This may constitute a dispute of fact, but it is not one <u>material</u> to this action. The defendants here do not contend that they hold the commercial mortgage. Nor do they seek to foreclose under it. Rather, they seek to foreclose under the Wells Fargo mortgage, arguing, as discussed <u>supra</u>, that the mortgage pre-dating the merger encumbers the entirety of the post-merger property. Thus, even if Provencher currently holds

---

[27] Plaintiff's Mem. (doc. no. 27-1) at 2.

[28] Defendants' Mot. Ex. J (doc. no. 23-2).

[29] Compl. (doc. no. 1-1) ¶ 10.

[30] Plaintiff's Mem. (doc. no. 27-1) at 4-5.

13

the commercial mortgage, that fact would not preclude summary judgment as to Wells Fargo's rights to foreclose under the Wells Fargo mortgage.

Davey has argued, in a related vein, that only the assignee of the commercial mortgage has a right to foreclose on the merged property. Under New Hampshire law, however, as a general proposition, the claim of the mortgagee who first recorded its interest has priority over that of a subsequent mortgagee. See Amoskeag Bank v. Chagnon, 133 N.H. 11, 14 (1990). Wells Fargo recorded its interest in 71 Plaistow Road on September 23, 2004,[31] well before Davey mortgaged the merged property on August 11, 2006. Wells Fargo's claim therefore has priority over the commercial mortgage.

Furthermore, to the extent that Davey seeks to assert the rights of the individual who holds the commercial mortgage as against Wells Fargo, he lacks standing to do so in any representative capacity. A litigant asserting the rights of a third party must show that

> the litigant personally has suffered an injury in fact that gives rise to a sufficiently concrete interest in the adjudication of the third party's rights; second, that the litigant has a close relationship to the third party; and third, that some hindrance exists that prevents the third party from protecting its own interests.

---

[31] Defendants' Mot. Ex. E (doc. no. 23-7).

14

Council Of Ins. Agents & Brokers v. Juarbe-Jimenez, 443 F.3d 103, 108 (1st Cir. 2006). Davey has made no such showing here. And, though Davey represented at oral argument that Provencher has had notice of this action since its inception, Provencher has not asserted his own interests in this action.

C. **Estoppel**

Finally, Wells Fargo's prior concession before the Land Board that its mortgage encumbered only the 71 Plaistow Road parcel does not preclude it from arguing, now, that its mortgage encumbers the entirety of the merged property.

"The doctrine of judicial estoppel . . . operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding." Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010). Even assuming that the Land Board hearing constituted "an earlier court proceeding,"[32] Wells Fargo did not "successfully assert" that its mortgage encompassed only the 71 Plaistow Road parcel. Though Wells Fargo admitted as much in its answer in

---

[32] Though defendants argue otherwise, there is some authority allowing for an adjudicatory proceeding before an administrative body to constitute a "court proceeding" for judicial estoppel purposes. E.g., King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196 (4th Cir. 1998) (analyzing effect of positions taken before the Social Security Administration in judicial estoppel context). The court need not resolve that issue here, however.

15

that proceeding, it further argued that the subsequent merger and commercial mortgage created a "cloud on the title" to the merged properties, which the Superior Court should resolve before the Land Board determined who was entitled to the deposit in the eminent domain proceedings.[33] The Land Board rejected that position.[34]

Furthermore, as the defendants observe, Wells Fargo took its positions before the Land Board in January 2012. The Mahmoud decision issued over four years later, in September 2016. While Wells Fargo's present argument may have been available to it in 2012, in theory, its current position lacked definitive authority in settled law at the time of the Land Board hearing. Cf. Boston Gas Co. v. Century Indem. Co., 708 F.3d 254, 263 (1st Cir. 2013) (shift in applicable law "relevant to" the judicial-estoppel analysis where party's legal theory changes).

IV. **Conclusion**

The defendants have demonstrated that, on the undisputed facts present in this case and under settled New Hampshire law, they are entitled to judgment as a matter of law on the plaintiff's claim. Accordingly, the court GRANTS the

---

[33] Defendants' Mot. Ex. K (doc. no. 23-13) at 3.

[34] Id. at 3-5.

defendants' motion for summary judgment.[35]  The clerk shall enter

judgment accordingly and close the case.

　　**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:　　October 5, 2018

cc:　Joseph C. Davey, III, pro se
　　 Jay C. Davey, pro se
　　 Joseph Patrick Kennedy, Esq.

---

[35] Document no. 23.